980 F.2d 731
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Lucien JACKSON, Defendant-Appellant.
 No. 92-1117.
 United States Court of Appeals, Sixth Circuit.
 Nov. 27, 1992.
 
 Before BOYCE F. MARTIN, Jr. and BOGGS, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant, Lucien Jackson, alleges ineffective assistance of trial counsel following his convictions for felon in possession of a firearm, and possession of an unregistered firearm. We vacate the district court's order denying Jackson's motion for new trial for the following reasons.
 
 I.
 
 2
 On August 30, 1990, Detroit Police Department Narcotics Division officers, accompanied by Bureau of Alcohol, Tobacco and Firearms Special Agent Donald Dawkins, approached 19179 and 19189 Lindsay Street armed with search warrants. As the law enforcement officers approached, they observed defendant-appellant Lucien Jackson ("Jackson") and Everett Wilks in the driveway between the two houses. As the officers emerged from the marked police van, Sergeant Benjamin Lee observed Jackson reach into his right pocket and remove a small plastic bag which Jackson threw to the ground. Sergeant Lee, after ordering Jackson to lie on the ground, retrieved the plastic bag which contained seven rocks of cocaine base (commonly referred to as "crack" cocaine). Jackson was immediately placed under arrest and advised of his constitutional rights.[1]
 
 
 3
 Though the parties disagree on which house was searched first, it is clear that both 19179 and 19189 Lindsay were searched. The search of 19179 Lindsay revealed two guns in a first-floor bedroom closet: a 12-gauge Mossberg shotgun and a sawed-off Winchester shotgun. The parties agree that defendant's girlfriend (and mother of his three children), LaShan Henry, resides at 19179 Lindsay. The parties disagree, however, as to whether the defendant lived with Ms. Henry at the time of his arrest. Though Jackson, when arrested, admitted to Sergeant Lee that he resided at 19179 Lindsay with Ms. Henry and their children, he now argues, as he argued in district court, that he lived with his brother Theron on Michigan Avenue at the time of his arrest. The prosecution asserts that Jackson resided with Ms. Henry at least five or six nights per week at the time of his arrest.
 
 
 4
 Incident to the search, Ms. Henry admitted, on two separate occasions, both orally and in writing, that the two shotguns belonged to the defendant, that he resided with her at 19179 Lindsay five or six nights per week, and that she is "scared to death" of Jackson because he has "threatened [her] a number of times." Joint Appendix at 185. At trial, however, Ms. Henry denied making any statements to the law enforcement officers implicating Jackson.
 
 
 5
 The arresting officers, after completing the search, transported Jackson to the Border Patrol for processing. The defendant was subsequently interviewed by Officer Romel Jamerson and Special Agent Dawkins after being advised of his constitutional rights. Jackson revealed that he lived at 19179 Lindsay with Ms. Henry and admitted that the two shotguns were his. In fact, Jackson reviewed, then signed, the "Detroit Police Department Interrogation Record" which admitted his ownership of the weapons.
 
 
 6
 On September 18, 1990, the grand jury returned a two-count indictment. Count One charged Jackson and Wilks with aiding and abetting the possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Count Two charged Jackson and Wilks with aiding and abetting the possession with intent to distribute cocaine base within 1000 feet of a school in violation of 21 U.S.C. §§ 841(a)(1) and 845a, and 18 U.S.C. § 2.
 
 
 7
 A three-count superseding indictment was returned on November 15, 1990. Count One charged Jackson and Wilks with aiding and abetting the possession with intent to distribute cocaine base within 1000 feet of a school in violation of 21 U.S.C. §§ 841(a)(1) and 845a, and 18 U.S.C. § 2. Count Two charged Jackson with being a felon in possession of a firearm (the 12-gauge Mossberg shotgun) in violation of 18 U.S.C. § 922(g)(1). Count Three charged Jackson with possession of an unregistered firearm (the sawed-off Winchester shotgun) in violation of 26 U.S.C. § 5861(d).
 
 
 8
 The defendant's jury trial commenced on January 31, 1991. Jackson disputed the government's position that he possessed the two guns. The prosecution presented numerous witnesses to prove Jackson's ownership of the firearms: Officer Jamerson presented the written admissions made by Jackson at the Border Patrol; Officer Knight testified that Ms. Henry had admitted that the shotguns found at 19179 Lindsay were Jackson's firearms; Ms. Henry admitted telling Special Agent Dawkins that the shotguns belonged to the defendant but testified, at trial, that her earlier statements were not true and that she had made the statements implicating Jackson merely to protect herself. In fact, Henry testified that she purchased the Mossberg shotgun to protect her family, and asserted that her sister's boyfriend, "Steve," owned the sawed-off Winchester shotgun.
 
 
 9
 In turn, the defense attorney called numerous witnesses to the stand. Jackson's brother, Theron, testified that the defendant lived with him, not with Ms. Henry. Larry Taylor testified that Jackson did not live with Ms. Henry at 19179 Lindsay and that the sawed-off Winchester shotgun was, in fact, owned by "Steve." Ms. Winston, a neighbor, testified that Jackson did not reside with Ms. Henry and that he did not possess any cocaine when the law enforcement officers arrested him. Jackson ultimately chose to take the witness stand in his own defense and testified that Officer Jamerson forced him to sign the Detroit Police Department Interrogation Record which purportedly contained fallacious responses to the officer's questions.
 
 
 10
 On February 7, 1991, the jury acquitted both Jackson and Wilks of the drug charge (Count One), but convicted Jackson on the firearms charges (Counts Two and Three).
 
 
 11
 Jackson, alleging that his trial counsel had failed to properly prepare for trial, thereafter requested that his trial counsel be replaced prior to sentencing. The district court complied with Jackson's request.
 
 
 12
 On October 8, 1991 (over eight months after the jury's verdict), Jackson's newly-appointed counsel filed a motion for a new trial arguing that Jackson had been denied the effective assistance of counsel at his trial. Jackson claimed, inter alia, that his trial counsel's performance was constitutionally deficient because he failed to interview and call as a witness Deundra Shelton who would have testified as follows:
 
 
 13
 1. I used to live next door to LaShan Henry on Lindsay Street, where the officers seized the sawed-off shotgun from.
 
 
 14
 2. Steve Gilbert and Ralph Thornhill had been driving around with the sawed-off shotgun in their car. Someone told them that they shouldn't drive around with a gun like that in their car.
 
 
 15
 3. Steve Gilbert, who was LaShan's sister [sic] boyfriend, brought the gun to LaShan's house. I personally saw them take the gun into the house on Lindsay Street.
 
 
 16
 4. Later, when Lucien Jackson found out that the gun had been put in the house, he told LaShan Henry to have Steve take his gun and get it out of the house.
 
 
 17
 5. I never saw Lucien Jackson with the sawed-off shotgun in his possession.
 
 
 18
 Affidavit of Deundra Shelton at 1.
 
 
 19
 After hearing oral arguments on November 25, 1991, the district court judge, ruling from the bench, denied the defendant's motion for a new trial after determining that Jackson had failed to demonstrate that his trial counsel's performance fell below an objective standard of reasonableness. Specifically, the court found that Shelton's proffered testimony, to the limited extent that it would have been admissible, was cumulative of the testimony offered by Ms. Henry and Larry Taylor.
 
 
 20
 On January 17, 1992, the district court sentenced Jackson to thirty months imprisonment on Counts Two and Three, to be served concurrently, to be followed by two years of supervised release. The defendant thereafter filed a timely notice of appeal and is currently free on an appeal bond.
 
 II.
 
 21
 The Federal Rules of Criminal Procedure provide:
 
 
 22
 A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case. A motion for a new trial based on any other grounds shall be made within 7 days after verdict or finding of guilty or within such further time as the court may fix during the 7-day period.
 
 
 23
 Fed.R.Crim.P. 33.
 
 
 24
 The government argues on appeal that "[t]he trial court lacked jurisdiction to grant defendant's motion for new trial which was filed more than seven days after the verdict was returned." Appellee's Brief at 9. Jackson did not file his motion with the district court within the seven-day time limit. Moreover, the district court did not extend the filing date during the seven-day period. The district court apparently entertained Jackson's "Motion for New Trial Based on Ineffective Assistance of Counsel" under the newly discovered evidence provision of Rule 33.
 
 
 25
 In United States v. Seago, 930 F.2d 482 (6th Cir.1991), the Sixth Circuit joined the majority of circuits in "concluding that evidence of ineffective assistance of counsel is not newly discovered evidence for purposes of a motion for new trial where the facts supporting the claim were within the defendant's knowledge at the time of trial." Id. at 489. Moreover, "Rule 33 requires that the evidence itself, not merely the legal implications of the evidence, be newly discovered." Id. After observing his counsel's alleged deficiencies during trial, Jackson can not persuasively argue that such evidence is newly discovered. Accordingly, Jackson's "Motion for New Trial Based on Ineffective Assistance of Counsel" was untimely and the district court lacked jurisdiction to consider it.
 
 III.
 
 26
 We VACATE the district court's order denying Jackson's motion for new trial for the aforementioned reasons.
 
 
 
 [1]
 Everett Wilks was also arrested for possessing five rocks of "crack" cocaine